IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


ANDREW MORTON DEVERE                                                    PLAINTIFF

V.                                       NO. 15-5039

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration               DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Andrew Morton Devere, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.      Procedural Background:**

Plaintiff protectively filed his applications for DIB and SSI on June 26, 2012, alleging an inability to work since June 1, 1994, due to Asperger's disease and pervasive developmental disorder.[1] (Tr. 118-128, 149, 153). An administrative hearing was held on

---

[1] Asperger Disorder – (1) a pervasive developmental d. characterized by severe and enduring impairment in social skills and restrictive and repetitive behaviors and interests, leading to impaired social and occupational functioning but without significant delays in language development; however, constructs of Asperger d. other than those in DSM include the criteria of less social impairment than in autism and in impaired

1

August 13, 2013, at which Plaintiff was represented by counsel, and he, his mother, and his employer[2] testified. (Tr. 31-65).

By written decision dated September 16, 2013, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – Asperger's disease and pervasive developmental disorder. (Tr. 18). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 18). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: he can perform simple, routine, repetitive tasks, in settings where interpersonal contact is incidental to the work performed, and supervision is simple, direct, and concrete.

(Tr. 21). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would be able to perform such jobs as hand packer, sweeper, and poultry hanger. (Tr. 26).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on December 8, 2014. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 10,11).

**II.   Applicable Law:**

---

communications. (2) a DSM diagnosis that is established when the specified criteria are met. <u>Stedman's Medical Dictionary</u> 568 (28th ed. 2006).

[2] As will be discussed in further detail later in this opinion, at the time of the hearing, Plaintiff was working part-time at Spring Woods Behavioral Health Hospital. (Tr. 46).

2

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §§ 404.1520, 416.920.

**III.   Discussion:**

Plaintiff argues that the ALJ erred in disregarding the opinions and findings of Dr. Richard D. Back, Ph.D., and Dr. Connie K. Venhaus, Ph.D.; erred in failing to consider all of Plaintiff's impairments in combination; and erred in his RFC determination. (Doc.10).

Plaintiff was born in 1989. (Tr. 149). The record in this case reflects that a Psychological Evaluation was performed on Plaintiff by Daniel I. Drake, Ph.D., on July 26, 1996, when Plaintiff was diagnosed with oppositional defiant disorder, mixed receptive-expressive language disorder, and was given a GAF score of 60. (Tr. 285). On December 15, 1998, Dr. Terry L. Efird, Ph.D., referred Plaintiff for consideration of special education and related services. (Tr. 274).

Five years later, on January 28, 2003, Dr. Back conducted a Mental Status and Evaluation of Adaptive Functioning. (Tr. 270). Dr. Back noted that Plaintiff's communication area of adaptive behavior was severely impaired, and that his concentration

4

was markedly impaired on Digit Span. (Tr. 272-273). Dr. Back diagnosed Plaintiff with pervasive developmental disorder, NOS, and opined that Plaintiff's condition was not expected to improve within 12 months. (Tr. 273). Dr. Back concluded that Plaintiff's adaptive functioning was consistent with a diagnosis of Mental Retardation. "(The claimant is not mentally retarded, but his level of adaptive functioning is severely impaired)." (Tr. 273).

On June 6, 2008, Gene Chambers, Ph.D., conducted a Mental Diagnostic Evaluation, and noted that when asked about the limitations that Plaintiff might have in working a job, Plaintiff was unable to articulate his deficiencies. (Tr. 301). Plaintiff's mother then spoke to Dr. Chambers independently, and acknowledged that she had very little information about Asperger's disorder, but from what she had read, he did seem to fit that diagnostic category. (Tr. 301). Dr. Chambers found Plaintiff's speech to be limited to understand and that he had noticeable difficulties pronouncing R sounds, as well as L sounds. (Tr. 303). He was also slow to formulate his responses. (Tr. 303). Dr. Chambers believed Plaintiff likely had Borderline to Low Average Intelligence. (Tr. 303). Dr. Chambers reported that Plaintiff would continue to carry a diagnosis of Pervasive Developmental Disorder, and did appear to be more like an Asperger's disorder. (Tr. 304). Dr. Chambers diagnosed Plaintiff with Pervasive Developmental Disorder (Asperger's Disorder), Developmental Learning Disorders, and gave Plaintiff a GAF score of 45-55. (Tr. 304). He further found that Plaintiff's capacity to communicate and interact in a socially adequate manner was limited, based on his Asperger's Disorder, which included social limitations, and that Plaintiff's capacity to communicate in an intelligent and effective way was also limited, not only by his speech, but by his slowness and processing information. (Tr. 304). Dr. Chambers found

5

Plaintiff's capacity to cope with the typical mental/cognitive demands of basic work-like tasks had limitations, based on his diagnostic category. (Tr. 305). Dr. Chambers concluded that Plaintiff's capacity to attend and sustain concentration on basic tasks, and to sustain persistence in completing tasks had limitations, and that his capacity to complete work-like tasks within an acceptable time frame had significant limitations, based on his slowness in processing and performing executive type functions. (Tr. 305).

On July 16, 2009, Letitia C. Hitz, Ph.D., conducted a Psychological Screening Evaluation of Plaintiff. (Tr. 330). She reported that Plaintiff graduated from Prairie Grove High School, and was in special education during his schooling. (Tr. 330). He had special assistance by the resource teacher as needed, along with accommodations, such as modified tests and extra time for tests. (Tr. 330). She opined that in training, Plaintiff would benefit from an apprenticeship program with explicit instruction not relying on book learning, and, on the job, should be able to operate simple equipment and learn routinized jobs with a limited number of steps, and that help would probably be needed to establish contingencies for dealing with deviations from work routine. (Tr. 331).

By report dated July 16, 2013, Loree G. Alrawhani, an Employment Training Advisor for Workforce, reported that Plaintiff had been a participant in the Workforce Investment Act Year Round Youth Program ("Workforce"), which is designed for youths in grades 9-12, since April of 2004, and noted that Plaintiff had difficulty remembering how to complete tasks correctly and must be shown "multiple times" the correct way to complete the task. (Tr. 244). She indicated that Plaintiff forgot procedures from one work day to the next and had to be reinstructed on how to accomplish the same task. Although she stated that Plaintiff had improved in the area of repetitive tasks, it had taken almost two years doing the same task to

learn, and that adding a new task was a challenge for both Plaintiff and his supervisor. (Tr. 244). She noted her concern that after graduation, Plaintiff would not be able to hold down a regular full time job in order to support himself, and believed that if Plaintiff was eligible for social security disability, he would seek out other resources available to him to make his life productive, yet have the reassurance that he had the financial support he would need to survive while he struggled with the issues and barriers of everyday life. (Tr. 244).

Also by report dated July 16, 2013, Paul F. DeArmond reported that Plaintiff was assigned to him at Prairie Grove Battlefield State Park through the "Workforce" program for a period of 18-24 months, and that it was explained to him that Plaintiff was a special needs person which he soon experienced. (Tr. 245). He stated that Plaintiff required very close supervision on most every task, and that he found him using tools in an unsafe manner performing simple jobs in questionable ways, and sometimes unsafely, and sometimes using material unwisely and excessively. (Tr. 245). Although he found Plaintiff to be very sweet and pleasant, he required a lot of work. (Tr. 245).

After graduation from high school, Plaintiff attempted to receive education through Northwest Arkansas Community College, but was unable to complete more than two courses per semester and was not able to pass both of the courses. (Tr. 411). Thereafter, Plaintiff attended the Arkansas Career Training Institute Hot Springs Rehabilitation Hospital ("ACTI"), beginning on August 14, 2011. (Tr. 365).

On February 29, 2012, Plaintiff underwent a Psychological Evaluation by Connie K. Venhaus, Ph.D., and Simone Collins, M.S., Practicum Student. (Tr. 169). This psychological evaluation was requested by the social services department to clarify current intellectual and adaptive functioning, and to assist in treatment planning. (Tr. 169). It was noted that Plaintiff

7

had never lived independently, and received special education services throughout schooling for learning disorders in reading and written expression. (Tr.l 169). Dr. Venhaus reported that Plaintiff's mother indicated that he was able to learn routines after multiple repetitions accompanied by written instructions, and that Plaintiff became quite anxious if he was asked to perform quickly, and required close supervision at work and home in order to accomplish tasks. (Tr. 170). Dr. Venhaus found that Plaintiff's ability to keep information in mind and "online" long enough to perform mental operations with it was quite low on Digit Span and Arithmetic subtests, and that his ratings would suggest "very significant deficits in his independent living skills with regard to communication, community use, functional academics, home living, health and safety, leisure, self-care, self-direction, social activities, and work." ((Tr. 172). Dr. Venhaus further concluded that Plaintiff's deficits in adaptive functioning precluded him from managing activities of daily living at a developmentally-appropriate level, and that he evidenced significant deficits in working memory. (Tr. 172). She opined that he would function most effectively in supported employment settings that offered significant structure, guidance, and feedback, and that jobs that required multitasking, rapid performance of tasks, and independent decision making should be avoided. (Tr. 173). Dr. Venhaus diagnosed Plaintiff with Pervasive Developmental Disorder, NOS, and gave him a GAF score of 60. (Tr. 173).

In May of 2012, Plaintiff was nearing the end of his training, and one of his instructors at ACTI, Curtis Faulkner, indicated Plaintiff was doing a "great job" and was "work ready." (Tr. 322). In June of 2012, however, a counselor at Arkansas Rehabilitation Services indicated that Mr. Faulkner had some concerns about Plaintiff making some decisions in life when it came to employment and keeping a job. (Tr. 385).

On August 15, 2012, non-examining consultant, Jerry R. Henderson, Ph.D., completed a Psychiatric Review Technique report and a Mental RFC Assessment. (Tr. 341, 355). Dr. Henderson concluded that Plaintiff retained the capacity for simple and repetitive tasks in an environment in which interpersonal contact was only incidental (unskilled). (Tr. 358). On January 24, 2013, non-examining consultant, Kevin Santulli, Ph.D., affirmed Dr. Henderson's findings. (Tr. 419).

Plaintiff was again seen by Dr. Back for a Mental Diagnostic Evaluation on July 29, 2013. (Tr. 420). Dr. Back noted that Plaintiff drove past his office several times, despite having specific directions from his mother, got lost, and called the receptionist to finish getting there. (Tr. 421). Dr. Back noted that Plaintiff was employed on a part-time basis at a cafeteria at Springwoods Psychiatric Hospital, thirty hours per week. (Tr. 422). Dr. Back reported that Plaintiff's mother said the only reason he continued to have this job was his supervisor had appointed herself "angel" to him. (Tr. 422). Dr. Back found Plaintiff's speech to be generally difficult to understand, secondary to a speech problem. (Tr. 423). Dr. Back further found that the current signs, symptoms, and information from his mother were consistent with autism. (Tr. 425). Dr. Back diagnosed Plaintiff with Autistic Disorder and gave him a GAF score of 45-55. (Tr. 425). Dr. Back then concluded that Plaintiff suffered from marked impairments in three areas: his day to day adaptive functioning – finding he was incapable of completing activities of daily living independently; his capacity to communicate and interact in a socially adequate manner; and his capacity to sustain persistence in completing tasks. (Tr. 425). He also found Plaintiff was not able to manage funds without assistance. (Tr. 426).

At the hearing held before the ALJ on August 13, 2013, Plaintiff's boss, Penny Saunders, testified that Plaintiff had been working for her since December of 2012, and that he cooked, cleaned, served and delivered trays, and "picked up stuff." (Tr. 46). She testified that she had rearranged the menu for him so that he could read the instructions and see what had to be done, and how it had to be done. (Tr. 47). She stated that she and others worked as a team and reminded him every day they were with him of what he needed to do, and that they took the extra time because he had become very special. (Tr. 47). She stated that Plaintiff still needed constant reminders, and that he sometimes would get distracted and overwhelmed. (Tr. 49).

Plaintiff's mother also testified at the hearing, noting that Plaintiff had improved so much, but throughout his life, had been very delayed. (Tr. 52). She stated that if there was something she would want him to do, she would need to be very specific about what she wanted him to do. (Tr. 52). She believed Plaintiff needed somebody to check on him regularly, and did not think he would be able to have any other job other than working for Ms. Saunders. (Tr. 56).

As stated earlier, the ALJ found Plaintiff would be able to perform a full range of unskilled work at all exertional levels. (Tr. 21). In making this determination, the ALJ gave great weight to the opinions of the non-examining state agency consultants, and gave limited weight to the opinions of Dr. Venhaus, Dr. Back, Plaintiff's mother, and third parties. (Tr. 22-25).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own

10

descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

The regulations provide that more weight is generally given to the opinion of a source who has examined a claimant than to the opinion of a non-examining source. 20 C.F.R. §§ 404.1527(c)(1); 416.927(c)(1). In this case, after considering the record as a whole, the Court cannot say there is substantial evidence supporting the weight the ALJ gave the various opinions.

The ALJ stated that he relied "heavily on the opinion of Dr. Henderson, noting that he and Dr. Santulli were "trained and experienced in the area of disability evaluations according to Social Security disability program rules." (Tr. 22). He found both of their opinions to be entirely consistent with the evidence of record. (Tr. 22). The ALJ discussed Dr. Venhaus' opinion, and agreed with her opinion that Plaintiff would function most effectively in a

11

supported employment setting that offered significant structure, guidance, and feedback, but would need to avoid multitasking, rapid performance of tasks, and independent decision making. (Tr.22). However, the ALJ noted that for purposes of disability adjudication, an individual's RFC represented the most they can do, and not the least. (Tr. 22).

The ALJ addressed Dr. Back's opinion, acknowledging that Dr. Back found Plaintiff had marked limitations in three areas. (Tr. 23). However, the ALJ gave Dr. Back's opinion little weight, because Dr. Back's opinion "relies wholly on the statement of the claimant's mother and adopts it," and relied on the "results of a one-time-only examination of the claimant, and the subjective reports of the claimant and his mother." (Tr. 23). The Court observes that contrary to the ALJ's assertion, Dr. Back examined Plaintiff two separate times – in 2003 and 2013.

In this case, the Court finds that the ALJ failed to sufficiently explain the reasons he gave the opinions of the non-examining physicians more weight than the examining physicians, and therefore remands this matter to the Commissioner in order for him to more fully explain why he gave the non-examining physicians' opinions greater weight than those of the examining physicians. The Court also suggests that the ALJ give the opinions from the non-medical sources, such as counselors and instructors, and previous employers "serious consideration" in accordance with SSR 06-3p. See Hallett v. Colvin, No. 1:13-CV-00725(MAT), 2016 WL 551614 at *4 (W.D.N.Y. Feb. 12, 2016). The ALJ should then re-evaluate his RFC.

**IV.   Conclusion:**

Accordingly, the Court concludes that the ALJ's decision is not supported by substantial evidence, and therefore, reverses and remands this matter to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. §405(g).

IT IS SO ORDERED this 7th day of March, 2016.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE